Mr. Basquez is here for the appellate. Ms. Mariani for the government. Mr. Basquez, you may proceed. Thank you, Your Honor. May it please the Court, my name is Professor Ricardo Basquez. I represent Steven Dean with the University of Miami Federal Appellate Clinic and the Federal Public Defender's Office. Your Honors, in this case, the District Court arbitrarily imposed conditions of supervised release that were supported only by unsubstantiated allegations. How much of an objection was lodged to the imposition of those conditions of release? There was just a blanket objection, right? I object. Well, Your Honor, that's correct. The Assistant Federal Public Defender, Abigail Becker, stood up and said, I object to the conditions regarding the search condition and the sex offender treatment condition. But nothing more than that. Well, Your Honor, I think under the circumstances, the objection was more than sufficient because the test is whether the objection is sufficient to alert the District Court to the basis for it. In other words, this is not a case where we're arguing an obscure rule of law. This is a case where the Supreme Court in Morrissey v. Brewer, this Court in United States v. Copeland, and Federal Rule of Criminal Procedure 32.1b2 all say there's a procedure to be followed at supervised release hearings. So even if this is plain error, we satisfy all three prongs of the plain error standard, and we only need one. We have a Supreme Court decision, we have an 11th Circuit decision, and we have a statute. How do you establish plain error if you can't establish that the facts upon which the Court relied upon to impose these special conditions of release are not false? Your Honor, that is a very good question, and that is the crux of the government's argument. The government believes that it can shift the burden of proof to the defense unconstitutionally because the plain error standard might apply. But the error here is not the substance of the conditions. The error here is procedural. It's relying on unreliable triple or quadruple hearsay to do something. In other words, the relief we're seeking is a remand for a proper hearing. So the condition may or may not be valid at the end of the day, but there needs to be evidence in the record, and we do not have the burden. Mr. Dean has no burden in that regard. The government needed to adduce evidence if it thought that Mr. Dean was a sex offender. If we have the PSI and there are no objections to the PSI, can't the government and the Court rely upon the PSI as the facts, operative facts of the case? The facts in the PSI are true. It is true that there exists a police report that contains triple or quadruple hearsay. Right. But that doesn't mean that the substance of that is true. In other words, there was no reason for the federal public defender to say, by the way, those unproven, dismissed allegations that the state of Florida did not pursue and said there was not enough evidence to pursue, that, in fact, didn't happen. There's, in other words, nothing... How could the government know that at the end of the day, you were going to object? In other words, how can you ask them to have put on evidence to something that you hadn't objected to? The government didn't seek this special condition, and the probation officer didn't recommend the special condition. All those questions are perfectly valid, Your Honor, if we had any reason to know that this unreliable hearsay was going to be used in violation of binding precedent. United States v. Fraser says that just because the federal rules of evidence don't apply at supervised release, that doesn't mean it's a lawless proceeding where spurious and unsubstantiated allegations can all of a sudden be converted into facts if the defendant doesn't prove his innocence. That's not the law. When the federal rules of evidence don't apply, the common law applies. And unreliable hearsay is inadmissible in any federal court at common law. So there is no reason in the world for the federal public defender to say, well, I better make sure that a judge of many years' experience doesn't all of a sudden decide to impose conditions based on a police report that's triple or quadruple hearsay, even though that would blatantly violate United States v. Fraser. Let me make sure that I'm prepared for that. That's an unreasonable burden to put on the defense attorney who was busy arguing a completely different issue, which is what the entire hearing was spent on. The entire hearing was spent on whether this guideline book or that guideline book applied. And then at the end of the hearing, the judge surprised everybody by announcing these conditions. This isn't something the government asked for. It isn't something the probation officer asked for. This really came out of left field. And so it's really unfair to say, well, the district judge can just do anything, even if it violates established precedent, Morrissey, Fraser, Copeland, federal- Well, Moran. Doesn't Moran permit it? No. In Moran, the defendant had, in fact, been convicted of sex offenses. But your issue is notice. The question is, doesn't Moran allow the imposition of conditions without that specific notice? My issue is not only notice, your honor. And no, I don't believe it does. My issue is that none of the six requirements of due process were met in this case. Notice is just one of them. Moran says that you can rely on facts. And we don't have a problem with that. But there is a big difference between allegations and facts. There is no case that the government has identified, and I don't know of any, where a supervised release condition has been upheld on unsubstantiated triple or quadruple hearsay. Moran had two convictions. Lechner had admitted his prior crimes. That's the unpublished case the government cites on page 21 of their brief. And Bull had an extensive history of domestic violence, including two convictions. So those are all cases where the supervised release condition related to a prior crime that was proven with actual evidence that was reliable. This case is a massive expansion of everything we understand about adversarial adjudication, where the government has the burden of showing that some deprivation of liberty is reasonable and rational. Didn't the report and recommendation, weren't there facts in there that demonstrated that Dean had a history of sexually abusing children? No, Your Honor. There was nothing in the report and recommendation upon which the court could rely to make that conclusion? Not constitutionally. The report and recommendation describes a police report that relates one incident that the state of Florida did not pursue because it could not prove it. So the underlying premise of the government's brief here is- Well, the concern that the state set forward, I guess, was that they didn't want to have a 12-year-old be forced to testify when he was going to be willing to plead to a lesser count. And that is one side of the story. That's what I said. That's the story that- And you've said the other side of the story. Well, no, the probation officer didn't seek the other side of the story. The probation officer didn't contact the state defense lawyer. Well, the other side of the story, I think, is what you just said, which is they couldn't prove it. Well, we don't know. See, there's this sort of underlying premise that little children don't lie. But that's not the law. The Supreme Court has recognized in many cases that little children sometimes do lie, especially when they're influenced by adults who may have problems with each other. Tome v. United States is the classic example where a little five-year-old girl was potentially, the court implies, brainwashed by her mother to say things about her father so that the mother would get custody. And the Supreme Court said, you can't just take the little girl's word for it because- He did plead guilty, though, to- I mean, it was a lesser count, but he did plead guilty to having done something with the little girl. Did he not? And we've admitted that. And he was punished for that. And he accepted his supervised release punishment for that. Right. So my point is, by your client's concession, and I'm not suggesting that we believe or don't believe a little girl who didn't even testify, but there must have been something that happened there. And I think that he's- and we have no problem with that. All we're saying is, if you're going to impose punishment for something that has not been proven, then you're going to have to bring evidence for that. Mr. Dean came into court and said, I admit that there was an altercation with the child, but it wasn't sexual. It was just child abuse. And the state of Florida accepted that. So that's all we know for sure. And I don't think it's fair to, as the government seeks, reverse the burden of proof and force Mr. Dean to prove he's innocent just because the victim is a small child. I understand that that provokes emotions and needs to be cautious and protect children. But wouldn't the thing to have done would have been after- I mean, I understand all of your arguments, but even assuming all of them have merit, and that it was appropriate for the lawyer who was defending Mr. Dean not to make any objection to the statements that were in the report and recommendation by the probation officer, even assuming all that to be the case. At the end of the day, when he was asked if there were any objections, the attorney said simply, yes, we object to the conditions, and didn't say any basis whatsoever. Didn't say we didn't have notice. We didn't- there was hearsay that was relied upon in order to present these conditions. There was nothing further there. I mean, wasn't there some obligation on the part of the attorney to express some kind of problems more specifically? Your Honor, again, I think that Ms. Becker did under the circumstances where no one in the courtroom saw this coming, as far as the record shows, I think Ms. Becker did as well or better than any lawyer would and to require a defense attorney who has her mind on a completely different issue to suddenly evaluate something that just happened and in one second come up with every provision of law that it may violate is a completely superhuman standard that cannot be met. Okay, fair enough. But don't you think there should have been some objection? I mean, it was instead of a general objection, the law in this circuit is pretty clear that you have to say why you're objecting. And look, I understand. And it's not an easy thing to be standing where you're standing or where Ms. Becker was standing or anything like that. But I mean, the law is in this circuit, you have to specify what your objection is. There's no specification whatsoever here. The law in this circuit is that the district judge has to know what the objection is. And I think under the circumstances, given the clarity of Morrissey, Copeland and the federal rules, that any district judge would know that you have to afford the defendant an opportunity to be heard and that your rulings need to be based on competent evidence. That's not a high standard. That's not too much to expect from a federal district judge that your rulings be based on actual evidence and not third or fourth level hearsay. But in any event, Your Honor, because of Morrissey, because of Copeland and because of federal rule 32.1, we meet plain error. There's no way this proceeding comported with due process. Any one of those six violations requires vacator and remand. And then we could have notice, we could have a hearing, the defense would have time to investigate, maybe send an investigator to talk to the girl or her mother or the brother or the police or the defense attorney from state. Then we could have an orderly hearing where the little girl's allegations are discussed and evaluated. And if he did it, he did it. But if he didn't, he didn't. We don't know. Thank you, counsel. We'll hear from Miss Mariani. May it please the court, Assistant United States Attorney Nicole Mariani on behalf of the United States. Joining me at counsel table is Assistant United States Attorney Robert Brady, who handled this case before the district court. As Your Honor's touched on, I think I'd like to initially just discuss the applicable standards of review because I think it makes all of your tasks a bit easier. I think, I think. I don't want to speak on behalf of my clients, but I don't think there's really much controversy here that plain error applies. Okay, then I will move on. Also, as the court noted in speaking with my opposing counsel, the case of United States versus Moran controls the notice issue. In that Moran, it squarely rejected the defendant's argument. In that case, this court held that a defendant is not entitled to notice before a district court imposes special conditions of supervised release to address the defendant's proclivity for sexual misconduct. Right, but what about, what about counsel's argument that in this case, the only basis for imposing those conditions was a summary of a police report as provided by the report and recommendation and that, you know, counsel had no way of knowing that the court was even going to consider relying on something like that? I think the record somewhat belies that contention. First, this probation report was three pages long. One and a half of those pages detailed all of the allegations underlying that aggravated child abuse conviction. It went into detail about Dean's conduct in sexually molesting the little girl, how it was reported, and also why, as this court noted, the district attorney decided not to prosecute that case. I want it to be noted that the district court did not dismiss any charges. It null-prossed two charges and the report and recommendation explained that it null-prossed the two child sex offenses and permitted Dean to plead to aggravated child abuse because they did not want to put the young girl through the trauma of having to testify in open court when Dean would receive a lengthy sentence for that aggravated child abuse conviction. In addition, Dean received that probation report five months before his supervised release revocation and his subsequent sentencing. But how much... But let me ask it to you this way. If the whole basis for the conditions being imposed was a police report that was summarized by the report and recommendation, then would it matter how much time there was that he had to review that particular report and recommendation that included the discussion of the police report? I mean, why does it matter in this case if, as counsel is arguing, of course he admitted to the report and recommendation as it summarized it, because that's what the police report said. There was no question that the police report said that. I mean, is it your position that by not objecting to what was in the report and recommendation and how it summarized the police report that he was also admitting to the underlying facts of the police report? I think under this court's law, as outlined in United States v. Bennett and also in Federal Rule of Criminal Procedure 32, when a defendant does not object to the facts contained in a probation report, he admits those facts as true for sentencing. Right, except I guess my question is, he's saying, yes, I agree with that and I admit that there's a police report that says that, but that doesn't mean that I admit the facts as alleged in the police report that is summarized. Do you have a specific response to that? I mean, I have a twofold response to that. The first is, I think this is typical of all probation reports, but they generally are a recitation, especially in the section on on-charge conduct and acquitted conduct, which again, this court can consider on-charge conduct, acquitted conduct, and hearsay so long as it has an initial reliability and the defendant has an opportunity to rebut the evidence at sentencing. I think that is one piece of this, is my opposing counsel is somewhat conflating through constitutional and evidentiary requirements of a supervised release for revocation and of a subsequent sentencing. For example, in a supervised release for revocation, there is a qualified right to confront witnesses, whereas in sentencing, there is not a confrontation right. In sentencing, due process is satisfied where the hearsay has an initial reliability. And here there are several initial reliability in this probation report. I think one piece of it is, during the sentencing hearing, the defendant himself, Dean, admits that as part of the state sentence, he has been ordered to attend treatment at the Christie House. The Christie House is a Miami-based organization whose sole mission is to prevent child sex abuse. If he did not commit the aggravated child abuse by committing a sexual offense, the district court would have no reason to have sentenced him to a sex offender treatment at the Christie House. In addition, you have the part of the probation report that explains that the state prosecutor, why they null prostitute charges and allowed him to plead guilty to aggravated child abuse. And in there it says that the facts of the case had not changed, but they allowed that plea to protect the victim. I think you can consider those two things, which again, he did not object to, in considering the reliability of that hearsay. In addition, he talks about how there was not a meaningful opportunity to be heard and how he was blindsided. I think there are a few things in the record that belie that contention. The first is that in Dean's written objections to the report and recommendation, he does spend the majority of time discussing which sentencing guidelines manuals to use. But at the conclusion of that, he says that he will address the 3553A factors at the final revocation hearing, which indicated that he knew his history and characteristics, which include the allegations that he molested a young child, would be considered sentencing. In addition, throughout the sentencing hearing, the facts that were underlying Dean's crime do come up. At the outset of the sentencing, the district court told Dean that he considered the entirety of his probation report and invited him to present any objections. Dean presented an objection, but not to the detailed facts of his aggravated child abuse conviction and the allegation that he molested the child. The government then argued, quote, there's an identifiable victim, it was a child and he committed an unspeakable act. And people who commit those types of offenses are predisposed to engage in that type of activity again. Dean then had a lengthy exchange with the court during which he did not contest that he molested a child or that he was predisposed to be a recidivist because he had committed a child sexual offense. During that exchange, the district court noted, I think the act that he's been punished for in the state is a horrible act. And Dean did not challenge that. The government then, in arguing that a 30-month sentence and additional supervision was appropriate for Dean, stated, given the nature of the underlying offense, the predominant concern is the protection of society from the offender and giving Dean a situation where he can conform his behavior to the law. In response, Dean didn't dispute that he molested a child or that he was a danger to the public. And he even conceded that his conduct was serious. And then at the end, the district court announced Dean's sentence and asked Dean specifically, do you object to any finding of facts or the manner in which the sentence was pronounced? And Dean did not object to any finding of fact. He didn't object to notice. He never said, I'm surprised that you consider what was in the report. I need more time. I need a continuance. Instead, he just objected, served for purposes of preserving appellate review to the imposition of the sex offender treatment and of the search consent requirement. Well, he could not have a problem with any of the facts in the report and recommendation. And still, his counsel could be surprised that the court was going to treat him as a registered sex offender when he wasn't convicted of a sex offense, right? I mean, that was not even the government didn't even ask for these special conditions and release. Did it? No, we did not. And you're correct, Your Honor, except for he at no point expressed that surprise. He at no point gave the district court an opportunity to consider his arguments, to consider his thoughts. He said nothing, which is why we are on plain error review here. And so, and going to Your Honor's... What about this? I guess the third condition of release. All of these conditions of release have to be reasonably related to at least one of the 3553A factors, right? Correct. Yes, Your Honor. Tell me how this one is. I mean, this one is pretty intrusive. Periodic searches of his home and his person and his computer based on reasonable suspicion unannounced. That's pretty, for someone who's not a registered sex offender, that's a pretty intrusive condition of release. How's that related to one of the 3553 factors? Absolutely, Your Honor. We believe the district court did not abuse its discretion because within that discretion, it could find that this condition is reasonably related to protecting the public as well as Dean's victim and also to deterring Dean from violating his supervised release condition that he not engage in electronic contact with minors, particularly his victim. There's no evidence here that he used a computer or he had any child porn on his computer or anything like that, so why is that necessary? It's necessary because, Your Honor, Dean has already violated his supervised release by committing a violent crime against a child and thus he's in need of additional monitoring and deterrence to make sure he doesn't harass his victim, he doesn't go out and meet new victims. The aim of the search consent is to curb Dean's criminal propensity, which so far has not ebbed while he's on supervised release. For example, in United States versus Moran, where there was no child pornography, there was no evidence that the defendant had been using the computer to meet his victims, this court upheld a supervised release condition, prohibiting the defendant from using the internet entirely, finding that it was reasonably related to the defendant's history of sexually assaulting children. But can you say that this condition, this third condition, would have helped to prevent this crime? The crime that he committed? I can honestly say we don't know. The little girl who he molested was the niece of his ex-girlfriend. But again, not only in the Moran case, this court also talked about it in the Carpenter case, where this court's cases have uniformly upheld conditions prohibiting defendants with a history of committing sex offenses from accessing computers or using the internet for the duration of the supervised release because this court has explained the internet in particular provides an area for people who have committed and have a propensity for these child sexual offenses to access child pornography, to find new victims, to seek out and harass their old victims. There is no suggestion of pornography in this case, child pornography. There is none, Your Honor. It's really a question of access to children. Maybe that may be the only basis for this condition. Correct, yes. I think it goes in tandem with that first special condition which restricts Dean's contact with minors. This helps to enforce that condition by permitting his probation officer. And again, it's based on reasonable suspicion. These aren't unfettered searches. This isn't constant monitoring of his email. This is giving his probation officer, when there's reasonable suspicion that he's violating his supervised release conditions, one of which is that he not engage in electronic contact with his victim or with other minors. Then the probation officer can go and look at his computer and look at his email and determine whether or not he has been finding small children again or he has been harassing his victim. He knows because it is the niece of his ex-girlfriend. So he certainly knows how to find her. And I think that's what this condition is going, is to try to protect this victim and try and protect other children from Dean seeking them out. One other point I wanted to make is my opposing counsel referenced the application of Frazier. First, I just want to point out again because we're on plain error that this court has never held that Frazier applies where there is not hearsay exception. And this court has never held that it applies to a sentencing following a supervised release revocation. And indeed, as I mentioned before, Frazier is involved with when hearsay is admissible during a supervised release revocation, which is a different procedural moment than the sentencing following a supervised release revocation. There are different due process shifts, whether we're looking at supervised release revocation or whether we're looking at sentencing. So the government submits. It was not plain error for the district court to fail to apply the Frazier test. And also, it was not error because Frazier does not apply to sentencings. If this court does not have any further questions, the government will rest on its brief and ask that you affirm Dean's sentence. Thank you. Mariani, we'll hear again from Mr. Basquat. Thank you, Your Honor. So I'd first like to address the United States contention that there is a difference between supervised release revocation and supervised release sentencing, because that doesn't exist anywhere in the law. And their brief doesn't cite any authority for that. Frazier repeatedly refers to supervised release revocation hearings. That's all one proceeding. Supervision gets revoked and a sentence is imposed right away. This isn't like there's a trial and then there's a separate sentencing. There is no trial. There's usually no witnesses, like in this case. And the entire point of the proceeding is just to figure out what the penalty is going to be. Indeed, in this case, that was the only issue. Mr. Dean came in and said, I committed child abuse under Florida law. I admit that. Then there was a long discussion about which guidelines book applies. And then the punishment was imposed. So this whole like attempt to slice this onion into like rice paper is not supported by any legal authority. Supervised release hearings are one thing. And Frazier treats them as one thing. The Fifth Amendment applies to them. Entirely. So that whole idea is novel and represents a drastic departure from precedent that's been on the book since 1994. As for counsel's attempt to explain how these conditions might be reasonably related, you know, she may be right. She may be wrong. We don't know. It's speculation. The reason we don't know is because the district judge didn't explain himself. The district judge just said, I'm going to do this because I read that there is a police report out there that says that this guy might be a sex offender. And that's good enough for me. That is just a fundamental, basic due process violation, even under plain error. It is not too much to ask if you're going to take away important constitutional rights like Mr. Dean's ability to communicate with his three children that we have a hearing where the evidence can be discussed in an orderly fashion. That's all we're asking for. This isn't, we're not asking that Mr. Dean be set free or be allowed to run a daycare center. We're just saying we'd like a hearing where the evidence can be weighed in a civilized, orderly proceeding. The points in the transcript that the United States Attorney's Office mentioned are interesting because nobody ever mentioned sex. Everybody says unspeakable act, terrible thing, horrifying. Yes, because he pled guilty to aggravated child abuse. That is an unspeakable act. It would be very bizarre to expect Ms. Becker to say, Judge, unspeakable, horrible? Are you sure? He committed aggravated child abuse and admitted it. The only issue here is whether all the unsubstantiated allegations could be relied upon in deciding on what his supervision would be like. And there's no authority for what the district court did in this case. It's, it would have been no trouble at all to say at the end of the discussion on the sentencing manuals to Mr. Dean's counsel, I as a district court judge I'm considering this condition. Would you like to say anything about that? Instead, he surprised Ms. Becker who then made whatever objections she made. And I understand that the court thinks it's not enough. That's fine. We still win under plain error. Instead of doing it the way that he did, you know, it wouldn't have been any trouble at all to just say, would you like to be heard on that? Which is what judges traditionally do after all. This isn't, we're not looking for some innovative departure from. No, but there are two points in time here. One is when the report and recommendation is presented and there is no objection. Now that would be subject to plain error. Now we do have a full, we do have a hearing on the matter. And then at the end of the hearing, then the judge asked what probably is a procedural unreasonableness question, which is now that we have had the hearing, do you have any objections to the findings of facts or the manner in which the sentence was pronounced? And that's when Ms. Becker raises this question of sexual offender treatment. Now, is this second bite of the apple, so to speak, is that also a plain error or what's the standard for review of a procedural unreasonableness objection? Your Honor, the standard of review for those is abusive discretion under Booker. Yeah. But I don't think this is a second bite of the apple. I think if I were the AFPD on this case and I see this report, I see a bunch of hearsay. Well, that was at the beginning. So you didn't file an objection. But then you had a hearing and then there is another opportunity to make that objection. And that's what we have been discussing. And my question to you is, how do we treat this second objection? Do we conflate it with the first one or do we treat it separately? No, I think the fair way to read the record, and I wasn't there, I'm just, but the way I read the record and the way I think it's most fair to read the record is the reporting recommendation didn't ask for any sex offender conditions and the United States Attorney's Office didn't ask for anything like that. So if I'm the defense attorney, I tell my client, look, they're not asking for anything too terrible. So let's just admit this and call it a day. And that's what you advise your client to do. But then you get there and at the end of the hearing, all of a sudden, the judge imposes something that nobody asked for and you stammer out whatever objection occurs to you in the moment. And case closed. But that's what I think is the most fair reading of the record. You tell your client, look, they're not looking to do anything too terrible to you here. They have to file this petition. They have to do something because the law requires it. And it looks to me like you're getting a fair shake. So let's just go in there, admit everything and be done. But then lo and behold, we're going to check your computers. We're going to make you go to sex offender treatment and pay for it. None of this was talked about before. This is like a complete surprise. And so all we're asking for is a remand to do it the right way. That's not a crazy ask. I think that's especially given that Morrissey, Copeland and the federal rules all spell out what the right way to do it is. And there's no dispute this wasn't done the right way. There's not a single case in which anybody's been punished for being a sex offender where there wasn't either an admission on the record like Lechner where the defendant says, yes, I did that. Or Moran, two convictions or Bull, two domestic violence convictions. And so, yes, special conditions need to relate to the facts. But we don't know the facts of this case. We just know that a little girl said something to somebody who told it to the police who put in a report that the probation officer then typed again and submitted it to the judge. And now all of a sudden the burden's on me to prove that Mr. Dean's innocent. That doesn't make sense, Your Honor, as I submit. Thank you very much. All right. Thank you, counsel. Thank you.